******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

JOHN J. STROLL, JR. *v.* BETTINA GLORIA
STROLL PASS ET AL.
(AC 47165)

IN RE PROBATE APPEAL OF
JOHN J. STROLL, JR.
(AC 46635)

Elgo, Moll and Suarez, Js.

*Syllabus*

In these consolidated appeals, the plaintiff appealed from, inter alia, the trial court's judgment affirming the Probate Court's order removing him as the fiduciary of the trusts and estates of his parents, the decedents. He claimed, inter alia, that the trial court improperly affirmed the order. *Held*:

The trial court did not abuse its discretion when it determined that the plaintiff's removal as fiduciary of the decedents' trusts and estates was warranted under the facts and circumstances of this case, as the court's factual findings that the defendant had breached his fiduciary duties were supported by testimonial and documentary evidence in the record and the court specifically credited testimony that the plaintiff had not provided a full and accurate accounting of the proceeds of various loans he took out on properties held in the decedents' trusts and estates.

The plaintiff could not prevail on his claim that the trial court improperly imposed sanctions on him for violating his fiduciary duties, as the record was clear that the court set aside the Probate Court's contempt finding and vacated the sanction that accompanied that finding.

The trial court did not abuse its discretion in entering three financial orders, as by their plain terms the orders were compensatory rather than punitive in nature and were intended to provide recompense to the decedents' trusts and estates for the plaintiff's breach of his fiduciary duties.

The plaintiff's claim that the trial court and the Probate Court failed to consider whether his brother should be appointed as successor fiduciary to the decedents' trusts and estates following his removal from that role was untenable, as the findings of both courts indicate that they credited evidence that his brother was unwilling to serve in that role.

This court dismissed the plaintiff's first appeal, taken from certain orders issued by the trial court, as jurisdictionally improper, as it was not taken from a final judgment.

Argued April 24—officially released November 18, 2025

*Procedural History*

Appeal, in the first case, from the decision of the Probate Court for the district of Westport removing the plaintiff as the fiduciary of the trusts and estates of the decedents of the named defendant et al., brought to the Superior Court in the judicial district of Fairfield, and appeal, in the second case, from the decision of the Probate Court for the district of Westport, inter alia, imposing sanctions on the plaintiff, brought to the Superior Court in the judicial district of Fairfield, where the cases were consolidated; thereafter, the cases were tried to the court, *Hon. Barry K. Stevens*, judge trial referee; subsequently the court, *Hon. Barry K. Stevens*, judge trial referee, issued certain orders and the plaintiff appealed to this court; thereafter, the court, *Hon. Barry K. Stevens*, judge trial referee, rendered judgment affirming the order of the Probate Court removing the plaintiff as fiduciary and issuing certain financial orders, and the plaintiff appealed to this court. *Appeal dismissed in AC 46635; affirmed.*

*Kenneth A. Votre*, for the appellant in Docket Nos. AC 47165 and AC 46635 (plaintiff).

*Frederic S. Ury*, with whom were *Meagan A. Cauda* and, on the brief, *Dana M. Hrelic*, for the appellee in Docket Nos. AC 47165 and AC 46635 (defendant Robert E. Grant).

*Opinion*

ELGO, J. This appeal concerns the administration of the trusts and estates of John J. Stroll, Sr., and Bettina Gloria Stroll, the parents of several parties to this probate dispute.[1] In Docket No. AC 47165, the plaintiff, John J. Stroll, Jr., appeals from the judgment of the Superior Court rendered in favor of the defendants,

[1] For clarity, we refer to John J. Stroll, Sr., and Bettina Gloria Stroll individually by first name and collectively as the parents in this opinion.

Bettina Gloria Stroll Pass (Betty), Joseph G. Stroll (Joseph), and Attorney Robert E. Grant.[2] The plaintiff claims that the court improperly (1) affirmed the order of the Probate Court removing him as the fiduciary of the parents' trusts and estates, (2) imposed sanctions on him for violating his fiduciary duties, and (3) failed to appoint Joseph as a successor fiduciary. In Docket No. AC 46635, an appeal the plaintiff filed while the proceedings before the Superior Court remained pending, the plaintiff raises identical claims. We affirm the judgment of the Superior Court in Docket No. AC 47165 and dismiss the appeal in Docket No. AC 46635 for lack of a final judgment.

The following facts, as set forth in the court's June 5, 2023 memorandum of decision, are relevant to this appeal. John and Bettina were married and had three children—the plaintiff, Betty, and Joseph. "Both John and Bettina were grantors of inter vivos trusts. Each trust was created in 1991 and amended in 2015. When they died, the instruments provided that the rest of their estates poured into the trusts. John died in September, 2015. At that time, his estate had reported assets of $2,210,713, that included the membership shares in the company [known as] Sterling Development, LLC [(Sterling Development)]. This company owned the property located at 980 Post Road East in Westport, having an approximate market value of $2.2 million. . . . John's trust had assets of $1,013,493. . . .

"[Bettina] died in February, 2017. At that time, her estate had reported assets of $1,048,506. . . . [Her]

[2] Betty and Joseph are siblings of the plaintiff and beneficiaries under the trusts and estates in question. Grant was appointed as successor fiduciary for the parents' trusts and estates in 2018. Following the plaintiff's commencement of a probate appeal in the Superior Court in 2019, Grant filed a motion to intervene as a defendant pursuant to General Statutes §§ 52-102 and 52-107, which the court granted. Although all three defendants have appeared in this appeal, only Grant filed an appellate brief with this court.

trust had reported assets of $2,634,238, including real property at 11 North Sasco Common in Westport [(North Sasco property)], having a net market value of $1.5 million, and 1001 South Ocean Avenue in Seaside Park, New Jersey, having a value of $910,000. . . . The plaintiff was named as the executor of [John and Bettina's] estates and trustee of [their] inter vivos trusts." (Citations omitted.)

In November, 2015, the Probate Court for the district of Westport admitted John's will into probate and appointed the plaintiff as executor. "In an order dated July 18, 2017, the Probate Court granted a motion filed by [Betty] for the court to accept jurisdiction over John's trust and ordered [the plaintiff] to produce an accounting. . . . In a second order also dated July 18, 2017, the Probate Court appointed [the plaintiff and Joseph] as temporary administrators of Bettina's estate. . . .

"In an order dated October 17, 2017, the Probate Court continued [the plaintiff and Joseph] as temporary administrators of Bettina's estate until February 1, 2018, and issued the following order directed to them: '[T]he temporary administrators will NOT have authority to sell any tangible personal property, real property or [Sterling Development] interests that own either of the foregoing or through which the decedents conducted their personal business without prior court approval.' . . .

"On May 10, 2018, the Probate Court issued orders concerning a trial that was held . . . on a motion filed by Betty to remove [the plaintiff] as a fiduciary of [the parents'] estates and trusts. The Probate Court appointed Grant as temporary administrator of [Bettina's] estate pending the outcome of the trial proceedings. . . .

"Between May, 2018, and May, 2019, various proceedings were held before the Probate Court . . . . In [an] August 8, 2019 order, the [Probate] Court removed [the plaintiff] as the fiduciary of [the parents'] estates and the trusts (Joseph was effectively removed as a fiduciary of [Bettina's] estate on February 1, 2018, and he requested not to be reappointed). The [Probate] Court appointed Grant as the administrator of the parents' estates and trusts. The [Probate] Court also ordered [the plaintiff] and Joseph 'to account for all funds under their control from the date of their appointment to date.' . . . The [Probate] Court made various findings to support this decision, including [the plaintiff's] failure to provide an accounting by March 15, 2019, as ordered by the court, failure to sufficiently explain the disappearance of jewelry which Betty was entitled to receive, use of the parents' credit cards after their deaths, improper withdrawal of $90,000 pursuant to a defunct power of attorney, and a pattern of hiring and firing expensive lawyers to the financial detriment of the estates and trusts." (Citations omitted; emphasis in original.)

From that order, the plaintiff appealed to the Superior Court in September, 2019. The plaintiff filed a second probate appeal in the Superior Court in January, 2020. The court subsequently granted a motion to consolidate those appeals. A five day trial followed in October and November, 2022, and the parties submitted posttrial briefs.

In its June 5, 2023 memorandum of decision on those two probate appeals, the court found that the plaintiff had egregiously breached his fiduciary duties and that his removal as the fiduciary of the parents' trusts and estates was "both warranted and necessary." The court thus entered the following orders: "(1) [The plaintiff] is ordered to pay Grant as fiduciary all loan proceeds

that have been received by [the plaintiff] from the mortgage loans placed on the estate or trust properties, and [the plaintiff] shall be held personally liable for the amounts not repaid. Interest shall accrue on the balance of all unpaid amounts at the rate of 8 percent a year until fully paid. (2) [The plaintiff] shall be held personally liable for all interest, loans, fees and expenses associated with the transfers and mortgages of all estate and trust properties. (3) [The plaintiff] shall be held personally liable for all attorney's fees and taxable costs incurred by Grant and Betty in connection with any litigation relating to the recoupment of these funds."

In that memorandum of decision, the court also stated that it would "hold a hearing at which time the parties may be heard regarding these and any other orders which may be appropriate. The court . . . notes that [the plaintiff] contests the Probate Court's order that he either pay rent or vacate the North Sasco property. The court will also entertain argument from the parties on this issue that was not fully or sufficiently addressed by the parties in their posttrial filings." Despite the pendency of that proceeding, the plaintiff filed an appeal of the court's June 5, 2023 decision, AC 46635, weeks later.

On June 7, 2023, the court held a supplemental hearing, at which it permitted the parties to be heard on, inter alia, the issue of whether the Probate Court properly ordered the plaintiff to pay rent while residing at the North Sasco property. The parties thereafter submitted supplemental briefs in July and August, 2023.

On November 15, 2023, the court issued an order titled "Final Orders of Judgment." In that order, the court stated in relevant part: "After review and consideration of the parties' most recent filings, the court makes the following findings. On the basis of the totality of the evidence presented (including the extent of the

losses to the estate caused by the plaintiff's actions and the value of the North Sasco property to the estate), this court finds, as did the Probate Court, that the plaintiff should either pay rent or vacate the North Sasco property. The specifics of any rental arrangement or the plaintiff's departure from the property shall be determined through further proceedings in the Probate Court. Additionally, the court finds that [Betty's] request for attorney's fees should be denied. The court declines to make any further findings or issue any further orders. . . . [T]his court's June 5, 2023 memorandum of decision and this present order constitute the final disposition of these probate appeals. These proceedings are now referred back or returned to the Probate Court for its consideration of any further matters or orders appropriate or necessary." The plaintiff filed an appeal from that judgment, AC 47165, on December 5, 2023.

Before considering the specific claims presented in this appeal, we note that "[a]n appeal from a Probate Court to the Superior Court is not an ordinary civil action. . . . When entertaining an appeal from an order or decree of a Probate Court, the Superior Court takes the place of and sits as the court of probate. . . . In ruling on a probate appeal, the Superior Court exercises the powers, not of a constitutional court of general or common law jurisdiction, but of a Probate Court." (Citations omitted.) *Kerin* v. *Stangle*, 209 Conn. 260, 263–64, 550 A.2d 1069 (1988). In cases in which no record was made of the proceedings before the Probate Court, "the Superior Court [is] required to undertake a de novo review of the Probate Court's decision."[3] (Internal quotation marks omitted.) *Salce* v. *Cardello*, 348 Conn. 90, 104, 301 A.3d 1031 (2023); see also *Kerin* v. *Stangle*, supra, 264 (function of Superior Court in appeals from order or decree of Probate Court "is to

---

[3] It is undisputed that no record was made of the Probate Court proceedings in the present case.

take jurisdiction of the order or decree appealed from and to try that issue de novo").

I

In AC 47165, the plaintiff first claims that the Superior Court improperly affirmed the order of the Probate Court removing him as the fiduciary of his parents' trusts and estates. We do not agree.

The term fiduciary, as defined in our probate statutes, expressly includes "the executor or administrator of a decedent's estate"; General Statutes § 45a-315; and a "trustee, conservator or guardian." General Statutes § 45a-199. The authority of the Probate Court to remove a fiduciary is codified in General Statutes § 45a-242 (a). It provides in relevant part: "The Probate Court having jurisdiction may, upon its own motion or upon the petition of any person interested . . . after notice and hearing, remove any fiduciary if: (1) The fiduciary becomes incapable of executing such fiduciary's trust, neglects to perform the duties of such fiduciary's trust, wastes the estate in such fiduciary's charge, or fails to furnish any additional or substitute probate bond ordered by the court, (2) lack of cooperation among cofiduciaries substantially impairs the administration of the estate, (3) because of unfitness, unwillingness or persistent failure of the fiduciary to administer the estate effectively, the court determines that removal of the fiduciary best serves the interests of the beneficiaries, or (4) there has been a substantial change of circumstances or removal is requested by all of the beneficiaries, the court finds that removal of the fiduciary best serves the interests of all the beneficiaries and is not inconsistent with a material purpose of the governing instrument and a suitable cofiduciary or successor fiduciary is available . . . ." General Statutes § 45a-242 (a).

"Whether grounds exist for an executor's removal is a question addressed to the sound discretion of the

Probate Court. . . . On appeal from probate, the [Superior Court] may exercise the same discretion de novo, reviewing the facts relating to the propriety of removal without regard to the Probate Court's decision. . . . Our task, then, is to determine whether the [Superior Court] abused its discretion . . . ."[4] (Citations omitted.) *Ramsdell* v. *Union Trust Co.*, 202 Conn. 57, 65, 519 A.2d 1185 (1987). "In determining whether the [Superior Court] abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did."[5] (Internal quotation marks omitted.) *Moore* v. *Ferguson*, 232 Conn. App. 797, 806, 337 A.3d 1166 (2025).

In its June 5, 2023 memorandum of decision, the Superior Court made a number of factual findings regarding the plaintiff's activities as the fiduciary of the parents' trusts and estates. Specifically, the court found that "the plaintiff filed what he called an 'accounting' [with the Probate Court] on April 2, 2019. . . . [T]his purported accounting was so disorganized and unintelligible that it was essentially useless. . . . [B]eginning in May, 2019, [the plaintiff] engaged in numerous transactions involving property of the parents' trusts. There is no dispute that [the plaintiff] engaged in these transactions and that they occurred while the Probate Court

---

[4] We note that the plaintiff has not identified the applicable standard of review for any of the claims set forth in his appellate briefs, as required by Practice Book § 67-4 (e).

[5] In his principal appellate brief, the plaintiff argues that the Superior Court, in reviewing his performance as the fiduciary of his parents' trusts and estates, "disregarded . . . well established rules for testamentary construction"—namely, that the expressed intent of a testator must control. The plaintiff misunderstands the relevant inquiry before the court. The issue was not whether the parents intended for him to serve as the fiduciary of their trusts and estates but, rather, whether the plaintiff had breached his fiduciary obligations while serving in that capacity, such that his removal was warranted.

was considering a motion, filed by Betty, to remove [the plaintiff] as fiduciary.

"On May 9, 2019, [the plaintiff] established Kirk Property I, for which he was the sole member. As the fiduciary of [Bettina's] trust, [the plaintiff] then transferred [the North Sasco property from Bettina's trust] to this entity for no consideration. On May 22, 2019, [the plaintiff] encumbered this property with a one year mortgage in the amount of $1,155,000. The interest rate of this mortgage was high, at 11 percent, and the settlement charges associated with this mortgage were also high, $72,940. The points charged by the lender for this loan totaled $57,500. [The plaintiff] placed the loan proceeds into various accounts that were solely in his name. After Grant became the fiduciary and this mortgage transaction was revealed, he extended the loan for six months at a cost of $23,000 to [Bettina's] trust. Grant testified that a full accounting of the net proceeds of this transaction, approximately $919,088, was never provided by [the plaintiff]. At the time of the trial on these probate appeals, this mortgage was under foreclosure.

"On May 9, 2019, [the plaintiff] established Kirk Property 2, LLC, for which he was the sole member. As fiduciary of [Bettina's] trust, he transferred another property from [her] trust, 1001 South Ocean Drive in [Seaside Park] New Jersey, to this entity for no consideration. He then encumbered [that] property with a $754,872 mortgage. Again, the interest rate was high, 11 percent, and the origination fee for this transaction was high, $37,000. [The plaintiff] placed the proceeds from this mortgage in various stock bank accounts that were solely in his name. . . .

"[John's] estate . . . held the membership shares of Sterling Development, which, in turn, owned property located at 980 Post Road East in Westport. This property

had a value of approximately $2.2 million. On June 5, 2019, [the plaintiff] placed an $800,000, one year mortgage on this property. The interest rate for this mortgage was 14 percent. [The plaintiff] apparently accomplished this transaction by representing that he was his deceased father. [The plaintiff] placed the proceeds of this loan into accounts that were solely in his name. Grant eventually extended the maturity date of this loan for six months at a cost of $32,000.

"The Probate Court . . . issued an order on August 8, 2019, removing [the plaintiff] and appointing Grant as fiduciary of the estates and the trusts. Nevertheless, [o]n October 29, 2019, [the plaintiff] purchased gold bars valued at $480,133 with the funds he received from the loan proceeds he obtained from the mortgage transactions. [The plaintiff] also wrote a series of checks from an account held by Sterling Development. These checks were purportedly dated August 6, 7 and 8, 2019, but were only sent to vendors . . . months after [the plaintiff] had been removed as fiduciary. One of these checks was for $800,000, which [the plaintiff] made payable to himself and deposited in September, 2019. Grant testified that [the plaintiff] has not provided a full accounting for this $800,000. In summary, [the plaintiff] removed millions of dollars in cash from the trusts and estates and encumbered millions of dollars of assets of the trusts and estates, which had been mostly mortgage free. He has not provided a full, appropriate accounting of the assets of the trusts and estates, and about his activities during the time he served as fiduciary." In addition, the court found that the plaintiff "encumbered the equity value and misappropriated funds of the estates and trusts for his own benefit and control to the exclusion of his siblings' interests while accomplishing an unwarranted and irrational waste of these assets. . . . [The plaintiff] neither advised [Betty and Joseph] about his actions, nor acquired their approval or the

Probate Court's approval for the transactions. [Betty and Joseph] had neither agreed to any settlement warranting any liquidation or mortgaging of trust and estate assets, nor did they authorize or consent to these transactions."

Those factual determinations find ample support in the testimonial and documentary evidence in the record before us. Moreover, the court specifically credited Grant's testimony that the plaintiff had not provided a full and accurate accounting of the proceeds of the various loans he took out on the properties held in the parents' trusts and estates.[6] "In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . It is within the province of the trial court, as the fact finder, to weigh the evidence presented and determine the credibility and effect to be given the evidence." (Citation omitted; internal quotation marks omitted.) *Cadle Co.* v. *D'Addario*, 268 Conn. 441, 462, 844 A.2d 836 (2004). For that reason, this court on appeal "cannot retry the facts or pass on the credibility of the witnesses." (Internal quotation marks omitted.) *McKay* v. *Longman*, 332 Conn. 394, 417, 211 A.3d 20 (2019).

In light of the foregoing, we conclude that the court did not abuse its discretion when it determined that the plaintiff's removal as fiduciary of the parents' trusts and estates was warranted under the facts and circumstances of this case.

II

The plaintiff claims that the court improperly imposed sanctions on him for violating his fiduciary duties. We disagree.

---

[6] We reiterate that Grant was appointed as the temporary administrator of Bettina's estate in May, 2018, fifteen months before the Probate Court removed the plaintiff from his role as fiduciary of the parents' trusts and estates.

"The decision to enter sanctions . . . and, if so, what sanction or sanctions to impose, is a matter within the sound discretion of the trial court. . . . In reviewing a claim that this discretion has been abused the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness." (Internal quotation marks omitted.) *Dur-A-Flex, Inc.* v. *Dy*, 349 Conn. 513, 556, 321 A.3d 295 (2024).

A

We first address the plaintiff's contention that the court improperly imposed a punitive sanction in contravention of the maxim that civil contempt sanctions are remedial, rather than punitive, in nature. As our Supreme Court has explained, "[j]udicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained. . . . Civil contempt proceedings are *not* punitive—i.e., they are not imposed for the purpose of vindicating the court's authority—but are purely remedial." (Citations omitted; emphasis in original; internal quotation marks omitted.) *DeMartino* v. *Monroe Little League, Inc.*, 192 Conn. 271, 278–79, 471 A.2d 638 (1984).

The record indicates that, in October, 2017, the Probate Court issued an order prohibiting the sale of "any tangible personal property, real property, or [Sterling Development] interests" without prior court approval. In an order dated October 24, 2019, the Probate Court found that the plaintiff intentionally violated that order. Accordingly, the Probate Court found the plaintiff in contempt and entered various sanctions, including a "penalty of $1945.60 per day."

At trial, the plaintiff challenged the propriety of that contempt finding. In its June 5, 2023 memorandum of

decision, the Superior Court stated: "As part of this appeal, [the plaintiff] contests this finding of contempt and the contempt sanctions imposed by the Probate Court. This court agrees that [the plaintiff's] appeal should be sustained in this regard."[7] The court thus set aside the finding of contempt and vacated the $1945.60 daily penalty.

The foregoing belies the plaintiff's claim that the Superior Court improperly imposed a punitive sanction. To the contrary, the record is clear that the court set aside the Probate Court's contempt finding and vacated the $1945.60 daily penalty that accompanied that finding.

B

We therefore turn our attention to the propriety of the three financial orders entered by the Superior Court

---

[7] As the court explained: "The Probate Court order at issue states: 'Notwithstanding the foregoing, the temporary administrators [the plaintiff and Joseph] shall NOT have authority to sell any tangible personal property, real property or [Sterling Development] interests that own either of the foregoing or through which the decedents conducted their personal business without prior court approval.' . . . On its face, this order appears only to apply to [Bettina's] estate because the order was directed to the temporary administrators who at that time were the administrators of [her] estate. Furthermore, [that] order did not apply to [Bettina's] trust because the Probate Court had not yet exercised jurisdiction over this trust. . . .

"This procedural background is important because, at least on its face, the October, 2017 order for which [the plaintiff] was found in contempt only appears to preclude the temporary administrators from transferring property from [Bettina's] estate. The evidence does not indicate that the transfers for which [the plaintiff] was held in contempt involved assets of [Bettina's] estate. For example, the North Sasco . . . property and the South Ocean Avenue property were in [Bettina's] trust. The mortgage placed on the Post Road property involved the estate and the trust of [John]. Although the Probate Court expressed the view that the October, 2017 order fully applied and was violated by [the plaintiff] . . . a finding of contempt must be premised on an order that is clear and unambiguous. Although this court finds that [the plaintiff's] conduct violated his fiduciary duties, under these circumstances, the court cannot find that the transfers violated a clear and unambiguous order of the Probate Court." (Citations omitted; emphasis in original.)

in its June 5, 2023 memorandum of decision.[8] In that decision, the court determined that the plaintiff's removal as the fiduciary of the parents' trusts and estates was "both warranted and necessary." After concluding that the punitive sanction related to the finding of contempt was improper, the court stated: "[O]ther orders relating to [the plaintiff's] breach of his fiduciary responsibilities are warranted. . . . [T]he transfers made by [the plaintiff] can only be described as a gross and egregious violation of his fiduciary duties. His arguments to the contrary are meritless and nonsensical. The Probate Court ordered that [the plaintiff] transfer the properties back to the appropriate trust or estate and it appears that these transfers have been made. These properties, however, have been returned with crippling encumbrances, and . . . [the plaintiff] has not returned all the loan proceeds received by him and has not provided a full and accurate accounting of these funds. . . . The court finds that the following orders are warranted: (1) [The plaintiff] is ordered to pay Grant as fiduciary all loan proceeds that have been received by [the plaintiff] from the mortgage loans placed on the estate or trust properties, and [the plaintiff] shall be held personally liable for the amounts not repaid. Interest shall accrue on the balance of all unpaid amounts at the rate of 8 percent a year until fully paid. (2) [The plaintiff] shall be held personally liable for all interest, loans, fees and expenses associated with the transfers and mortgages of all estate and trust properties. (3) [The plaintiff] shall be held personally liable for all attorney's fees and taxable costs incurred by Grant and Betty in connection with any litigation relating to the recoupment of these funds."

---

[8] In his principal appellate brief, the plaintiff also argued that the court, in its November 15, 2023 order, improperly ordered him to "either pay rent or vacate the North Sasco property." At oral argument before this court, the plaintiff's counsel formally abandoned that claim.

At a subsequent hearing held on June 7, 2023, the court offered the parties "a further opportunity to be heard" on the issue of its financial orders "before [the June 5, 2023] decision became final . . . ." At that time, the plaintiff's counsel characterized the court's three financial orders as "sanctions" and stated that he did not "believe the court [was] allowed to punish [the plaintiff] for his conduct . . . ." In response, the court stated: "Although the [June 5, 2023] order . . . used the word sanction . . . that's not the language that I used in the written decision itself. I didn't indicate that the orders I was issuing were sanctions specifically or per se. The orders I issued flowed from what the court found to be violations of fiduciary duties. . . . [Those financial] orders . . . are not viewed by the court to be punitive or a punishment in any way. They are viewed to be remunerative and compensatory to the estate as a result of the actions. I want to provide that qualification."

We agree with that assessment and conclude that the three financial orders entered by the court in its June 5, 2023 memorandum of decision are not punitive in nature. By their plain terms, those orders are compensatory and intended to provide recompense to the parents' trusts and estates for the plaintiff's breach of his fiduciary duties. See, e.g., *Goodyear Tire & Rubber Co.* v. *Haeger*, 581 U.S. 101, 108, 137 S. Ct. 1178, 197 L. Ed. 2d 585 (2017) ("a sanction counts as compensatory . . . if it is calibrate[d] to [the] damages caused by the bad-faith acts on which it is based" (internal quotation marks omitted)); see also *O'Brien* v. *O'Brien*, 326 Conn. 81, 104, 161 A.3d 1236 (2017) (explaining that court has discretion to impose remedial financial order so long as its value does "not exceed the reasonable value of the injured party's losses"). Indulging every reasonable presumption in favor of the correctness of the court's ruling, we conclude that the Superior Court did not

abuse its discretion in entering those three financial orders.

## III

The plaintiff also contends that both the Probate Court and the Superior Court failed to consider whether Joseph should be appointed as the successor fiduciary following the plaintiff's removal from that role. That claim is without merit.

The parents' wills contain identical provisions regarding the "[a]ppointment of [f]iduciaries" and designate Joseph as a successor executor in the event that either their spouse or the plaintiff could not serve in that capacity.[9] At oral argument before this court, the plaintiff's counsel stated that the Probate Court "never looked at those documents" or considered them in appointing Grant as the successor fiduciary of the parents' trusts and estates. The record before us indicates otherwise.

On August 8, 2019, the Probate Court issued a lengthy decree in which it enumerated sixty-two detailed findings of fact, which was admitted into evidence as an exhibit before the Superior Court. In those findings, the Probate Court expressly acknowledged that "[a]rticle IV of [Bettina's] will appointed [the plaintiff] as executor, and stated that if [he] could not act as executor, then Joseph would be executor." That finding demonstrates that the court was mindful of the appointment of fiduciaries provision contained in the parents' wills and considered that provision in appointing a successor fiduciary.

---

[9] Article IV of the respective wills of John and Bettina provides in relevant part: "I appoint my spouse as [e]xecutor of my [w]ill. If my spouse fails or ceases to act as [e]xecutor, I appoint [the plaintiff] as [e]xecutor of my [w]ill. If [the plaintiff] fails or ceases to act as [e]xecutor, I appoint [Joseph] as [e]xecutor of my [w]ill."

Significantly, the Probate Court also found that, "[a]t the May, 2018 hearing, Joseph told the court that he did not wish to be appointed as a fiduciary in this matter." In light of Joseph's unwillingness to serve in that role, the court appointed Grant as the successor fiduciary of the parents' trusts and estates. There is no indication in the record that, at any time during the proceedings before the Probate Court, any party requested to have Joseph appointed as the successor fiduciary or claimed that his appointment to the role was mandated by the parents' wills, as the plaintiff's counsel acknowledged at oral argument before this court.

In its June 5, 2023 memorandum of decision, the Superior Court likewise found that, during the proceedings before the Probate Court, Joseph explicitly asked to be removed as a fiduciary of Bettina's estate and the Probate Court granted that request. On appeal, the plaintiff has not challenged those factual findings as clearly erroneous.

The foregoing findings of the Probate Court and the Superior Court undermine the plaintiff's claim that they ignored the provisions in the parents' wills regarding the appointment of Joseph as a successor fiduciary. Rather, they indicate that both courts credited evidence that Joseph was unwilling to serve in that capacity, as was their prerogative as finders of fact. See *Cadle Co.* v. *D'Addario*, supra, 268 Conn. 462. For that reason, the plaintiff's claim that the courts failed to consider whether Joseph should be appointed as a successor fiduciary is untenable.

IV

As a final matter, we note that the plaintiff's appeal in AC 46635 raises identical claims as those presented in AC 47165, which obviates the need for further substantive discussion thereof. We nevertheless conclude

that the plaintiff's appeal in AC 46635 is jurisdictionally improper.

"The lack of a final judgment implicates the subject matter jurisdiction of an appellate court to hear an appeal. A determination regarding . . . subject matter jurisdiction is a question of law [over which we exercise plenary review]." (Internal quotation marks omitted.) *Smith* v. *Supple*, 346 Conn. 928, 936, 293 A.3d 851 (2023). "The jurisdiction of the appellate courts is restricted to appeals from judgments that are final. . . . The policy concerns underlying the final judgment rule are to discourage piecemeal appeals and to facilitate the speedy and orderly disposition of cases at the trial court level. . . . The appellate courts have a duty to dismiss, even on [their] own initiative, any appeal that [they lack] jurisdiction to hear." (Citations omitted; internal quotation marks omitted.) *Wolfork* v. *Yale Medical Group*, 335 Conn. 448, 459, 239 A.3d 272 (2020).

On June 26, 2023, the plaintiff filed the appeal in AC 46635. On his appeal form, the plaintiff stated that he was appealing from the court's June 5, 2023 decision. As we have noted, the court did not definitively resolve the plaintiff's claims in that decision and instead indicated that it would hold an additional hearing on those claims.[10] The court held a supplemental hearing later in June, 2023, at which it expressly indicated that it wanted "to give the parties a further opportunity to be heard" before its June 5, 2023 decision "became final." The court then permitted the parties to submit supplemental briefs in July and August, 2023, and issued what

---

[10] In its June 5, 2023 memorandum of decision, the court stated in relevant part: "The court will hold a hearing at which time the parties may be heard regarding these and any other orders which may be appropriate. The court . . . notes that [the plaintiff] contests the Probate Court's order that he either pay rent or vacate the North Sasco property. The court will also entertain argument from the parties on this issue that was not fully or sufficiently addressed by the parties in their posttrial filings."

it termed its "final orders of judgment" on November 15, 2023.[11]

In light of the foregoing, we conclude that the plaintiff's June 26, 2023 appeal in AC 46635 was not taken from an appealable final judgment, as the court's June 5, 2023 decision neither terminated a separate and distinct proceeding nor "so [concluded] the rights of the parties that further proceedings [could not] affect them." *State v. Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). Accordingly, we dismiss the plaintiff's appeal in AC 46635.

The appeal in AC 46635 is dismissed; the judgment in AC 47165 is affirmed.

In this opinion the other judges concurred.

---

[11] In its November 15, 2023 order, the court stated that its "June 5, 2023 memorandum of decision and this present order constitute the final disposition of these probate appeals. These proceedings are now referred back or returned to the Probate Court for its consideration of any further matters or orders appropriate or necessary." The plaintiff timely appealed from that final judgment when he filed the appeal in AC 47165 with this court on December 5, 2023. That appeal contains claims that are identical to those set forth in the plaintiff's appeal in AC 46635